UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADALILI LOPEZ-MORALES (A# 213-366-367),<br>Petitioner,<br>v.<br>WARDEN,<br>Respondent. | No. 1:26-cv-02416 DAD SCR<br><br>FINDINGS & RECOMMENDATIONS |

Petitioner is a federal immigration detainee who is proceeding though appointed counsel with a habeas corpus action pursuant to 28 U.S.C. § 2241. The matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302.

**I. Factual and Procedural History**

Petitioner, a native and citizen of Guatemala, entered the United States on January 13, 2020, at the age of fifteen, at the border near Lukeville, Arizona. ECF No. 9, ¶ 20. The Department of Homeland Security ("DHS") detained Petitioner, initiated removal proceedings, and transferred her to the custody of the Office of Refugee Resettlement ("ORR") for processing as an unaccompanied minor under the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 8 U.S.C. § 1232. Id., ¶ 20-21; 44. Petitioner was released to the custody of her aunt in February 2020 and went on to graduate high school and gain employment as a cashier. Id., ¶

22. In May 2022, an immigration judge ("IJ") dismissed her removal proceedings. Id., ¶ 23.

On February 15, 2026, Petitioner was a passenger in a vehicle being driven to work in Maryland by her boyfriend when ICE agents conducted a traffic stop. ECF No. 9 at 6, ¶ 24. During the stop, the agents inquired into Petitioner's immigration status and subsequently detained both her and her boyfriend. Id. Petitioner was served with a new Notice to Appear charging her as inadmissible pursuant to 8 U.S.C. § 1182(a)(6)(A)(i). ECF No. 10 at 2.

Petitioner, proceeding pro se, filed a § 2241 petition in the District of Maryland, Lopez-Morales v. Bondi, No. 1:26-cv-00634-MJM (D. Md.), on February 16, 2026. District Judge Matthew J. Maddox granted the petition in part on February 24, 2026, holding that Petitioner "is detained pursuant to the discretionary detention governed by 8 U.S.C. § 1226(a) and is entitled to review of her custody determination under 8 C.F.R. § 236.1," and ordered that a bond hearing be conducted pursuant to those procedures within ten days by an IJ. ECF No. 10-1 at 4-5. Judge Maddox denied the petition "as to any further relief at this time" and his order did not address the legality of Petitioner's re-arrest. Id. At the court-ordered hearing on March 6, 2026, an IJ denied bond writing in full that Petitioner "is a flight risk." ECF No. 10-2 at 1. Petitioner remains detained in the California City Detention Facility within this judicial district. ECF No. 9 at 2, ¶ 4.

Petitioner initiated this action on March 30, 2026, with a pro se § 2241 petition. After Respondents answered the petition, the undersigned appointed counsel due to the complexity of the legal issues involved and granted Petitioner leave to amend. ECF No. 7. The matter is now proceeding on Petitioner's first amended petition for writ of habeas corpus filed on May 6, 2026. ECF No. 9. Petitioner raises two claims. First, she alleges that her unlawful re-arrest and detention without pre-deprivation hearing violates procedural due process. Id. at 14, ¶¶ 54-58. Second, Petitioner alleges that her detention is punitive and unrelated to any legitimate government interest in violation of substantive due process. Id. at 15, ¶¶ 59-61. By way of relief, Petitioner seeks, *inter alia*, a declaration that she is detained pursuant to 8 U.S.C. § 1226(a) and an order directing ICE to immediately release her from custody. Id. at 15-16.

Respondents, citing the minority view of cases, argue in opposition that Petitioner is an applicant for admission subject to mandatory detention under 8 U.S.C. § 1225(b)(2). ECF No. 10

at 1-2. Respondents assert that DHS' processing of Petitioner as an unaccompanied minor under the TVPRA did not alter her status as an applicant for admission under § 1225(b)(2). Id. Petitioner filed a brief reply in which she cites the District of Maryland's finding that § 1226(a) governs her detention, as well as her initial processing as an unaccompanied minor under 8 U.S.C. § 1232 as separate grounds for defeating Respondents' mandatory detention arguments.

**II. Legal Standards**

The Due Process Clause protects persons in the United States from being deprived of life, liberty, or property without due process of law. U.S. Const. amend. V. The Supreme Court has concluded that "the Due Process Clause applies to all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas v. Davis, 533 U.S. 678, 693 (2001). Similarly, Ninth Circuit precedent holds that the Due Process Clause applies to noncitizens regardless of whether they are "seeking admission" or are "admitted" under immigration law. Wong v. United States, 373 F.3d 952, 973 (9th Cir. 2004), abrogated on other grounds by Wilkie v. Robbins, 551 U.S. 537 (2007).

Courts examine procedural due process claims in two steps: the first step is determining whether there exists a protected liberty interest under the Due Process Clause. The second step examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. See Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989); Morrissey v. Brewer, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due."). In deciding what process is due to immigration detainees, the Ninth Circuit has assumed, without deciding, that the three-part test articulated in Mathews v Elderidge, 424 U.S. 319, applies. See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206-07 (9th Cir. 2022). Under Mathews, the court considers three factors: (1) the private interest affected; (2) the risk of an erroneous deprivation of that interest; and (3) the government's interest involved including any fiscal or administrative burden that additional procedures would include. Mathews, 424 U.S. at 335.

////

////

## III. Analysis

### A. Applicable Detention Statute

Respondents acknowledge that the weight of authority does not support their position that Petitioner is an applicant for admission subject to mandatory detention pursuant to 8 U.S.C. § 1225(b)(2). ECF No. 10 at 2. Indeed, "[n]umerous district courts have held that § 1226, rather than § 1225, applies to individuals who were physically present in the United States for some period of time before they were detained by ICE." Gutierrez v. Chesnut, No. 1:25-cv-1515 DAD AC (HC), 2025 WL 3514495, at *4 (E.D. Cal. Dec. 8, 2025). The undersigned agrees with this majority view and finds additional support in the termination of Petitioner's removal proceedings in May 2022, which "demonstrates that she has not been 'seeking admission' in the time since." Del Valle Castillo v. Wamsley, No. 2:25-cv-2054 TMC, 2025 WL 3524932, at *7 (W.D. Wash. Nov. 26, 2025) (finding that the termination of petitioner's removal proceedings made her subject to § 1226(a) "regardless of the basis for her initial detention") (citing 8 C.F.R. § 1239.2(e)).

The undersigned also agrees with the many other district courts that have found the government's processing of an unaccompanied minor under the TVPRA precludes application of § 1225(b)(2):

> Petitioner cannot be simultaneously subject to both § 1225(b)(2) and the TVPRA because their detention schemes are facially incompatible. "The detention of unaccompanied minor children is governed by the TVPRA, which does not mandate detention." R.D.T.M. II, 2025 WL 2686866, at *4. Instead, the TVPRA provides that "an unaccompanied alien child in the custody of the Secretary of Health and Human Services shall be promptly placed in the least restrictive setting that is in the best interest of the child." 8 U.S.C. § 1232(c)(2)(A). If the unaccompanied child "reaches 18 years of age and is transferred to the custody of the Secretary of Homeland Security, the Secretary shall consider placement in the least restrictive setting available after taking into account the alien's danger to self, danger to the community, and risk of flight." 8 U.S.C. § 1232(c)(2)(B). This can include placement with an individual or organizational sponsor, or in a supervised group home. Id. This requirement of placement in the least restrictive setting is in direct conflict with mandatory detention. Respondents make no attempt to reconcile the two, nor do they argue or present authority suggesting § 1225(b)(2) usurps the protections afforded by the TVPRA.

F.S.S.M. v. Wofford, No. 1:25-CV-01518-TLN-AC, 2025 WL 3526671, at *4 (E.D. Cal. Dec. 9, 2025); see also Cornejo Rivera v. Olson, No. 3:25-CV-1090-CCB-SJF, 2026 WL 81753, at *2 (N.D. Ind. Jan. 12, 2026) (same and collecting cases); Salvador v. Bondi, No. 2:25-CV-07946-MRA-MAA, 2025 WL 2995055, at *7 (C.D. Cal. Sept. 2, 2025) ("[W]hen Petitioner crossed the border and was apprehended, the government did not classify him as an applicant for admission subject to expedited removal. That Petitioner should now—approximately four years after entering the country and being released by ORR—be treated as an 'applicant for admission' defies logic."). Respondents do not dispute Petitioner's initial TVPRA status yet argue, without support, that it does not impact the application of § 1225(b)(2). The undersigned is unpersuaded and concludes that Petitioner's detention is currently governed by § 1226(a), not § 1225(b)(2).

**B. Procedural Due Process Analysis**

Turning to the first step in the procedural due process analysis, the undersigned finds that Petitioner has a protected liberty interest in her continued freedom from detention. See F.S.S.M., 2025 WL 3526671, at *5 ("Petitioner's release pursuant to the TVPRA created a reasonable expectation that he would be entitled to retain his liberty under the TVPRA's protection."); Cajina v. Wofford, No. 1:25-CV-01566-DAD-AC (HC), 2025 WL 3251083, at *3 (E.D. Cal. Nov. 21, 2025) (finding that the petitioner "acquired a liberty interest in his continued freedom when DHS elected to release him" and collecting cases). Immigration officials released Petitioner from detention to her family sponsors in February 2020. In the six-plus years since, she has formed the "enduring attachments of normal life," Morrissey, 408 U.S. at 482, including residing with her family, graduating high school, gaining employment, and becoming an active member of her church. See Declaration of J. Brown, ¶ 9, ECF No. 9-1 at 3.

Consistent with the Court's Mathews analyses and rulings in substantively identical cases, the undersigned finds that Petitioner's Fifth Amendment right to procedural due process was violated by her re-detention without a pre-deprivation hearing. See Guaura v. Warden, 26-cv-01124-DAD-AC (HC), 2026 WL 895694 (E.D Cal. Apr. 1, 2026) (applying Cajina, 2025 WL 3251083, to grant petition and order immediate release on habeas petitioner's procedural due process claim); Lopez v. Albarran, No. 1:25-CV-01890-DAD-SCR (HC), 2025 WL 3691082

(E.D. Cal. Dec. 19, 2025) (same outcome as to a request for a temporary restraining order, relying on Perez v. Albarran, No. 1:25-CV-01540-DAD-CSK (HC), 2025 WL 3187578 (E.D. Cal. Nov. 14, 2025)); Ramos v. Warden, California City Corr. Ctr., No. 26-CV-01026-DAD-JDP, 2026 WL 836368, at *2 (E.D. Cal. Mar. 26, 2026) ("[T]he appropriate remedy is petitioner's immediate release where, as here, respondents have failed to provide authority for petitioner's detention.").

But the question remains whether Petitioner has already received a remedy for this due process violation, albeit belatedly, in the form of the post-deprivation hearing pursuant to 8 U.S.C. § 1226(a) ordered by the District of Maryland. For the reasons set forth below, the undersigned finds that the hearing was an inadequate remedy for Respondents' re-detention without pre-deprivation hearing and recommends the amended petition be granted and Petitioner be released.

First, this case is similar to Andrades Gonzalez v. Chestnut, No. 1:26-cv-1198 DAD CKD, 2026 WL 473059 (E.D. Cal. Feb. 19, 2026), where District Judge Drozd granted a motion for preliminary injunction and ordered the immediate release of a noncitizen after determining her humanitarian parole was unlawfully revoked. Although the petitioner had received a bond hearing roughly a month into her detention, Judge Drozd held that she was "likely to succeed on the merits of her claim that her due process rights were violated at the outset of her re-detention . . . . Any subsequent bond hearing 'does not sufficiently address the lawfulness of petitioner's re-detention in the first place.'" Andrades Gonzalez, 2026 WL 473059, at *2 (quoting Hernandez v. Lyons, No. 2:25-cv-5376 FWS AGR, 2025 WL 3191822, at *6 (C.D. Cal. June 18, 2025)).

Similarly, in Venega-Maltez v. Fereti Semaia et al., No. 5:26-cv-0525 JAK (AGRX), 2026 WL 846035 (C.D. Cal. Mar. 24, 2026), and relying on Judge Drozd's ruling in Andrades Gonzalez, District Judge Kronstadt rejected the government's argument that an IJ's finding of flight risk two months into petitioner's detention mooted his procedural due process challenge to the revocation of his release:

> As noted, Respondents argue that the relief Petitioner requested has already been provided because Petitioner received a bond hearing under § 1226(a). Dkts. 10, 16. However, the bond hearing did not address Petitioner's primary claims. The Petition and Motion seek immediate

> release based on the claim that Petitioner's redetention on December 16, 2025, without notice, an opportunity to be heard, or a showing of changed circumstances since his initial release in 2022, violated Petitioner's due process rights. A bond hearing provided two months after that redetention does not moot his claims because "[a]ny subsequent bond hearing 'does not sufficiently address the lawfulness of petitioner's redetention in the first place.'" Gonzalez v. Chestnut, No. 26-CV 1198, 2026 WL 473059, at *2 (E.D. Cal. Feb. 19, 2026) (citing Hernandez v. Lyons, No. 25-CV-5376, 2025 WL 3191822, at *6 (C.D. Cal. June 18, 2025)). Because Petitioner's claims concerning the lawfulness of his redetention have not been adjudicated, this element of the relief requested in the Petition and Motion is not moot.

Venega-Maltez, 2026 WL 846035, at *6. After applying the Mathews factors, Judge Kronstadt ordered respondents to immediately release petitioner and not re-detain him "without providing him with the necessary due process rights, which include notice, an opportunity to be heard, and a determination by neutral decision-maker that Petitioner should be redetained under the standards that apply given the basis of his prior release on parole[.]" Id. at *11.

The undersigned finds these rulings persuasive, particularly here given that the District Court of Maryland—which did not address the legality of Petitioner's re-arrest—ordered a generic bond hearing under 8 U.S.C. § 1226(a) and its implementing regulations. ECF No. 10-1 at 4-5. As Petitioner notes, ECF No. 9 at 13, ¶ 51, generally the government may only re-arrest a noncitizen upon a showing of materially changed circumstances. Saravia v. Sessions, 280 F. Supp. 3d 1168, 1197 (N.D. Cal. 2017), aff'd sub nom. Saravia for A.H. v. Sessions, 905 F.3d 1137 (9th Cir. 2018); see also Y.S.G. v. Andrews, No. 2:25-CV-1884-SCR, 2025 WL 2979309, at *10 (E.D. Cal. Oct. 22, 2025) (holding due process compels a showing of a material change in circumstances before the re-detention of a noncitizen and citing cases). But in a bond hearing pursuant to 8 U.S.C. § 1226(a), the burden is on the noncitizen to demonstrate that she is not a danger or flight risk. Miranda v. Garland, 34 F.4th 338, 366 (4th Cir. 2022) (upholding constitutionality of § 1226(a) procedures, including placement of burden of proof on noncitizen); Rodriguez Diaz, 53 F.4th at 1213-14 (same). Thus, the undersigned does not consider Petitioner's generic § 1226(a) bond hearing on March 6, 2026, to be an equivalent remedy for the due process violation here when it effectively required Petitioner to justify her own detention that

was unlawful from the start.

Accordingly, the undersigned recommends that Petitioner's first amended petition for writ of habeas corpus be granted on its procedural due process claim.[1] The appropriate remedy is an order directing Respondents' to immediately release Petitioner and enjoining them from re-detaining Petitioner without providing notice and a pre-deprivation hearing before an IJ. See Andrades Gonzalez, 2026 WL 473059, at *2.

**CONCLUSION**

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Petitioner's first amended petition for writ of habeas corpus (ECF No. 9) be GRANTED on Count 1 (procedural due process) as follows:

   a. Respondents be ORDERED to immediately release Petitioner ADALILI LOPEZ-MORALES (A# 213-366-367) from their custody; and

   b. Respondents be ENJOINED and RESTRAINED from de-detaining Petitioner without providing Petitioner notice and a pre-deprivation hearing before an IJ.

2. Respondents' motion to dismiss (ECF NO. 6) be DENIED.

3. Any order adopting these findings and recommendations state that it does not address the circumstances in which Respondents may detain Petitioner in the event Petitioner becomes subject to an executable final order of removal and Petitioner receives notice of that final order of removal.

4. The Clerk be directed to:

   a. Serve the **California City Detention Facility** with a copy of this Order; and

   b. Enter judgment in Petitioner's favor and close the case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **three days** after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. The undersigned finds that a shortened objection period

---

[1] In the interests of judicial economy, the undersigned need not address Petitioner's substantive due process claim.

is warranted in this case given the nature of the relief at issue as well as the fact that the parties have had sufficient time to submit all of their arguments in written briefs. See United States v. Barney, 568 F.2d 134, 136 (9th Cir. 1978) (per curiam) (stating that 28 U.S.C. § 636(b)(1) sets the maximum objection period and not the minimum); see also Local Rule 304(b). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: July 13, 2026

SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE